## Kensington Hospital for Women Case.

Argued January 16, 1948. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Pierce Archer, Jr.,* with him *Walter H. Robinson,*
for appellant.

*Townsend Munson,* with him *Owen Biddle* and *Townsend, Elliott & Munson,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, March 26, 1948:
The Women's Medical College of Pennsylvania appeals from the decree of the court below awarding assets of Kensington Hospital for Women to the Episcopal Hospital.[1] This appeal presents one controlling issue:

---

[1] The statutory enactment under which these proceedings are brought is the Act of April 26, 1885, P. L. 328, Section 10, as amended by the Act of May 23, 1895, P. L. 114, Section 1, 10 PS Section 13: "No disposition of property heretofore or hereafter made for any religious, charitable, literary or scientific use shall fail for

Did the court below err when, in applying the doctrine of *cy pres,* it awarded assets of a defunct nonsectarian institution to another which is sectarian under its charter but which in practice does not discriminate in any way as regards race, color or creed?

Episcopal Hospital (formerly known as the Protestant Episcopal Hospital of Philadelphia), on May 3, 1946, filed its petition for a rule to show cause why Kensington Hospital for Women should not file an accounting of its assets and endowments and, upon the audit of said account, a decree be entered awarding said assets and endowments to Episcopal Hospital. On May 17, 1946, Kensington filed its answer admitting: ". . . it has ceased carrying out its corporate purposes, functions, and objects" and submitted itself to the jurisdiction of the court. Subsequent thereto an account was filed, audited and confirmed.[2] Six institutions in addition to petitioner, claimed the assets and endowments of Kensington.[3] A master, commissioned to take the testimony of claimants and to make recommendations for distribution of the funds, in an exhaustive report recommended that a decree be entered awarding the assets of Kensington to the Episcopal Hospital. The court below dismissed all exceptions to said report which are material here,[4] and entered a final decree awarding

---

want of a trustee, or by reason of the objects being indefinite, uncertain or ceasing . . . but it shall be the duty of any orphans' court or court having equity jurisdiction in the proper county, to supply a trustee, and by its decree to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity . . ."

[2] The account, as confirmed, shows a balance of $80,226.38, consisting of cash, marketable securities, land, buildings, equipment and supplies.

[3] Claimants were Women's Medical College of Pennsylvania, Northeastern Hospital of Philadelphia, Stetson Hospital, Episcopal Hospital, St. Luke's and Children's Medical Center, Women's Hospital and St. Christopher's Hospital for Children. St. Christopher's Hospital for Children later withdrew its claim.

[4] One exception of Stetson Hospital was sustained but the same is not involved in the present controversy.

the entire fund to the Episcopal Hospital ". . . on the condition that such funds be received and accepted by the said Episcopal Hospital for use in the medical and surgical care of women patients, without regard to race, color, creed, and without any attempt at proselyting, or ability to pay, in the treatment of diseases of the rectum, diseases in the field of gynecology, genito-urinary diseases, and treatment of maternity cases, including pre-natal and post-natal treatment, and the care and treatment of children only when hospitalized in connection with maternity cases." Woman's Medical has appealed.

Kensington Hospital for Women was chartered on June 11, 1887. The stated purpose was "to afford gratuitous aid and proper surgical treatment to women without distinction of age or color suffering from diseases of the rectum and of the genito-urinary organs . . ." On November 10, 1922, the charter was amended to read as follows: "The object of said corporation is to afford surgical and medical treatment to persons requiring same." The hospital and buildings were located at 130-140 West Diamond Street and 240-242 North Waterloo Street, Philadelphia. It had always been operated as a non-sectarian hospital and never discriminated in any way as regards race, color or creed. On February 1, 1945, and for many years prior thereto, it was conducted solely as a hospital for women for maternity cases and for treatment of gynecological diseases. Problems of finance became acute in 1941 and at the insistence of the Community Fund of Philadelphia [5] arrangements were made with Episcopal Hospital to provide, *inter alia,* a joint administrator and staff integration in the field of gynecology and obstetrics, reorganization of the Board of Directors of Kensington to include five members who were also members of the Board of Managers

---

[5] The Community Fund agreed to reinstate Kensington as a participating agency upon condition that a working arrangement be entered into with Episcopal Hospital, having in mind an eventual merger.

of the Episcopal Hospital, appointment of the Superintendent of the Episcopal Hospital as administrator of Kensington, and appointment of the Chief of the Episcopal Hospital's gynecological and obstetrical services as medical head of Kensington. Pursuant to these arrangements, members of Kensington's visiting staff were appointed to Episcopal Hospital's obstetrical services, Episcopal Hospital took over Kensington's out-patient work and made available to Kensington its laundry and x-ray laboratory facilities, supplies of the two hospitals were purchased jointly at a substantial saving, and, in numerous other ways, joint administration was integrated in an unsuccessful effort to assist Kensington to extricate itself from financial difficulties.

Episcopal Hospital was chartered July 18, 1861, having as its purposes: "1. To provide medical and surgical aid and nursing for sick and injured persons. 2. To instruct and train suitable persons in the duties of nursing and attending upon the sick. 3. To provide the instructions and consolations of religion according to the principles of the Protestant Episcopal Church, for those who are under the care of the Institution. 4. Such other purposes incidental and kindred to those above mentioned as the Board of Managers, hereinafter to be provided, may prescribe." It is situate at Front Street and Lehigh Avenue, Philadelphia, approximately eight blocks from the site of the Kensington Hospital and presently contains 552 beds, including 64 bassinets. Its resident staff numbers 26, its visiting staff 91, and its courtesy staff 45. The endowment fund totals more than $5,000,000. The governing body is a Board of Managers, consisting of the Bishop of the diocese, who is ex-officio, the Honorary President of the Board, and 24 persons, communicants of the Protestant Episcopal Church in the diocese in which the hospital is located.

The burden is upon appellant to show a manifest abuse of discretion. Consideration of this record is limited to the issue above presented, for on all other phases

of the matter the court below, in the exercise of its broad discretionary powers, properly awarded the assets to Episcopal Hospital. The language used by this Court in *Commonwealth v. Pauline Home,* 141 Pa. 537, 545-546, 21 A. 661, is appropriate here: "The matter was very much in the discretion of the court below, and we would not reverse, unless for a clear abuse of discretion. No such abuse appears in this case."

The issue presented by this appeal is of first impression. Counsel have not cited any decided cases, in this jurisdiction or elsewhere, which may be deemed controlling, and independent research has failed to reveal any. The doctrine of *cy pres* is one of approximation: *Williams Estate,* 353 Pa. 638, 643, 46 A. 2d 237. The court must search out and ascertain the intention of the donor or testator and must exercise discretion in awarding the fund in question to such charitable institution which can most nearly give effect to that intention. See *Connors v. Ahearn,* 342 Pa. 5, 19 A. 2d 388; *Curran's Estate,* 310 Pa. 434, 165 A. 842. Under no circumstances can the judgment of a court capriciously be substituted for that of the donor or testator. In awarding funds under the *cy pres* doctrine, the powers of the court are governed by statute.

A reading of the record shows that Episcopal Hospital does not receive state aid because of its sectarian affiliation; that its Board of Managers must be members of the Episcopal Church; that the charter provides for the giving of instruction in the Episcopal religion and also provides that in the treatment of incurables, members of the Episcopal faith shall be given preference. These provisions have been very liberally applied in actual practice and are but formal provisions, never having been strictly enforced. There has never been any discrimination made because of the race, color or creed of patients. Nor has there been any case in which a member of the Episcopal Church has been given a preference. Doctors and nurses are appointed without any

regard to their religious affiliations. Illustrative of the non-sectarian practice is the analysis of admissions for the year 1945 to Episcopal Hospital which reveals that a great majority of the patients were of religious denomination other than Episcopalian.[6]

Cases involving a distinction between sectarian and non-sectarian institutions wherein the principal concern was the subject of state aid to hospitals and the prohibition of Article III of the Pennsylvania Constitution which prohibits appropriations of "public funds to any denominational or sectarian institution", are inapposite. Cf. *Collins v. Kephart*, 271 Pa. 428, 117 A. 440. The funds here involved are not public funds but moneys received from various donors who made their contributions for the charter purposes of Kensington. It is conceded that the source of the gifts to Kensington are unknown and that the exact intent of each of the donors is impossible to determine because none of these donors were present to testify at the hearing. Most of them have died. The funds contributed have not been segregated so that any particular fund has been impressed with the intention of any particular donor.

It cannot properly be said that this record reveals a manifest abuse of discretion in awarding assets of a defunct non-sectarian institution *cy pres* to a sectarian institution. A holding that the award *cy pres* represents an approximation of intention of the donors to Kensington must not be deemed a holding that application *cy pres* is to be made in all similar cases. Each case must be determined from the record there presented.

Decree affirmed; costs to be paid by appellant.

---

[6] The record reveals the following tabulation regarding admissions to Episcopal Hospital in the year 1945: Episcopalians, 1,469; Methodists, 1,033; Presbyterians, 665; Baptists, 757; Lutherans, 831; Jewish, 194; Roman Catholics, 5,670, and other denominations 540.

Dissenting Opinion by Mr. Justice Allen M. Stearne:

I dissent. The funds of this closed non-sectarian charitable hospital, which had received state aid, should n'ot be awarded under the *Cy Pres* doctrine to a sectarian charitable hospital, irrespective of how the sectarian hospital is being administered or in what form the award is made. There are other non-sectarian hospitals in reasonable proximity, claimants, who are qualified to receive the fund.