Glase Estate.

Argued November 30, 1955. Before Stearne, Jones, Bell, Musmanno and Arnold, JJ.

*Robert H. Malis,* with him *Malis, Malis & Malis,* for appellant.

*H. Ober Hess,* with him *Francis Ballard,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

Opinion by Mr. Justice Bell, January 12, 1956:

Testator died in 1916 leaving by his Will one-fourth of the residue of his estate (which has a present value of approximately $50,000.) after the death of the life

tenant to the "Home for the Training in Speech of Deaf Children Before They Are of School Age". This Home was known as the Bala School. It was a *boarding* school which was founded in 1891, with a maximum capacity of 60 students. Children between the ages of 2 and 8 years were admitted to the Home, which was supported by appropriations from the Commonwealth of Pennsylvania. The Bala School was closed in 1935 because the Legislature failed to appropriate any more money to support it. The life tenant died in 1953. The question here involved is which of the two claimants most nearly carries out under the doctrine of cy pres the testator's testamentary intent? *Philadelphia v. Heirs of Girard,* 45 Pa. 9; *Williams Estate,* 353 Pa. 638, 643, 46 A. 2d 237; *Kensington Hospital for Women Case,* 358 Pa. 458, 463, 58 A. 2d 154.

The Orphans' Court en banc agreed with the Master and the Auditing Judge and awarded the fund to the Pennsylvania School for the Deaf "to be used in maintaining and developing its services and training for deaf children of pre-school age". Ten other schools filed claims, but only the "Friends of the Deaf" filed exceptions or took this appeal.

The Pennsylvania School for the Deaf, which is located at 7500 Germantown Avenue, Philadelphia, was founded in 1820. It is a private *boarding* school managed by a Board of Directors and receives pupils between 3 years and 21 years old. Of the 484 students, 95 are residents of Philadelphia, and only 13 are day pupils. 33 pupils are under 6 years of age and are designated as pre-school pupils. It receives aid by way of appropriations from the Commonwealth of Pennsylvania. It is non-sectarian and is a boarding school which has served the community admirably during its long existence. It uses exclusively the oral method of teaching and it has facilities for taking care of chil-

dren of pre-school age. When the Bala School closed in 1935, three-fourths of its pupils transferred to the Pennsylvania School for the Deaf.

Friends of the Deaf is a nursery *day* school which was founded in 1940. It is a splendid non-sectarian institution with an average enrollment of 13 to 15 pupils, all of whom are of pre-school age. Friends of the Deaf base their claim mainly on the contention that pre-school age means under 4 years of age, plus the fact that it claims that the modern and wisest method of teaching and training deaf pupils is at a very early age—two to four—and at home, rather than at boarding school. It also emphasizes parent participation in the education of deaf children and promotes continuance of the parent-child relationship in the home.

Since the Pennsylvania School for the Deaf has the facilities and is willing, if necessary, to teach young pupils under 4 years of age, it is not necessary to decide whether pre-school age is, as appellant contends, under 4 years, although no authority was cited to support its contention.

From a review of the record it would seem to us, as it did to the Court below, that the Pennsylvania School for the Deaf more nearly carries out the testator's object and intent than does Friends of the Deaf. However, the test is not what we would have decided if we had been sitting as a trial Court—the test is whether the lower Court has mistaken or misapplied the law or committed a manifest abuse of discretion: *Kensington Hospital for Women Case*, 358 Pa., supra; *Commonwealth v. Pauline Home*, 141 Pa. 537, 546, 21 A. 661. Cf. also, *Johnson Will*, 370 Pa. 125, 130, 87 A. 2d 188; *Ranck Estate*, 381 Pa. 332, 337, 112 A. 2d 105.

We find no error of law and no manifest abuse of discretion. Decree affirmed; each party to pay its respective costs.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

In affirming the decision of the lower Court which awarded the fund under consideration to the Pennsylvania School for the Deaf, instead of to the School of the Friends for the Deaf, the Majority Opinion points out that the favored institution is a *boarding school.* What the Majority regards as an advantage to the children who are to benefit from the largesse of the testator Peter W. Glase, I deem to be a disadvantage.

It must be kept in mind that Peter Glase bequeathed the money here involved to the "Home for the Training in Speech of Deaf Children *Before They Are of School Age.*" He had in mind the education of deaf children of tender age. He knew that a deaf child must begin to receive instruction as soon as its brain comprehends the concept of communication and the reception of thought. Much damage can be done to the faculty of comprehension if instruction is delayed until such time as a consciousness of infirmity begins to gnaw at the child's spirit and will. Considerable harm can be done to a deaf child when its untutored parents attempt to teach the child by primitive signs and gestures. If the prop to which a sapling is bound is itself crooked, the sapling cannot grow straight. Professional guidance cannot be imparted too soon to deaf children. Miss Emma Garret, eminent teacher of deaf children and the first principal of the Bala School, was of the opinion, as testified to by Dr. Myer, that "education of a deaf child for language development should begin at the time that it was normal for any child to begin language development, namely, at the age of approximately one year—one and one-half—two years."

The Majority Opinion assumes that the Friends of the Deaf School is not as well equipped to teach deaf children as the Pennsylvania School for the Deaf because it is a *day* school. But *therein* lies its virtue. The

parents take the child to the school and remain with it for three or four hours' instruction per day and then take it home again. The parent is taught at the same time as the child. The mother or father is told what should and what should not be done. The child thus also continues to receive the love, affection and care which only parents can properly bestow and without which the child suffers a disadvantage that nothing can overcome.

The Pennsylvania School for the Deaf, as excellent and exemplary an institution as it is, does not measure up to what Peter Glase had in mind when he bequeathed funds to a *"Home* for the Training in Speech of Deaf Children *Before They Are of School Age."* This institution is a boarding school and requires that the child remain within its walls 24 hours a day. Furthermore, up until the present it never accepted children under the age of 4. A two- or three-year old child is too tender in body and spirit to become the inmate of a boarding school. It is too delicate in structure to undergo the routine of collective living which can only bruise, instead of strengthen, the self-reliance which a child, especially a handicapped one, must learn early. Although a child cannot be too young to be educated in the rudiments of transmission and reception of thought, it must, while still a tot, have the continuing protection of its parents.

The best school for a deaf infant is one which does not tax its capacity to understand and which allows for a wise and properly balanced intermixture of professional tutelage and parental care. The school of the Friends for the Deaf is ideal in this regard.

It is not of minor importance also to note that percentage-wise, the intentions of Peter Glase would be more faithfully respected by awarding the fund to the Friends school where at least 90% of every dollar

would be spent on what he intended to provide for, namely, education, that is, teachers, salaries, auditory equipment, hearing aids and concomitant devices used in modern teaching methods. On the contrary, of the amount given to the Pennsylvania School for the Deaf, the greatest percentage of every dollar must be spent on the maintenance of buildings, on heat, light, and repairs and on the purchase of food and clothing.

In conclusion I would say that while I have only respect and admiration for all those who have considered the delicate problems which this case has presented in providing for children around whom tragic fate has erected a towering wall shutting off from them the world symphony of music and voice, I still regret that in distributing the munificence of Peter W. Glase, the Friends of the Deaf did not receive a share of the funds left for the friends of the deaf.