## Women's Homoeopathic Hospital of Philadelphia Case.

314

Argued April 23, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Philip Price,* with him *George J. Hauptfuhrer, Jr., Stanhope S. Browne,* and *Barnes, Dechert, Price, Myers & Rhoads,* for Preston Maternity Hospital, appellant.

*Edward M. David,* with him *Walter Biddle Saul, Gerald K. Burns,* and *Saul, Ewing, Remick & Saul,* for St. Luke's and Children's Medical Center of Philadelphia, appellant.

*William Carson Bodine,* with him *Pepper, Bodine, Frick, Scheetz & Hamilton,* for Hahnemann Medical College and Hospital, appellee.

*John Mulford,* with him *Drinker, Biddle & Reath,* for Woman's Medical College of Pennsylvania, appellee.

*Richard W. Ledwith,* with him *Frank Rogers Donahue, Jr.,* and *MacCoy, Evans & Lewis,* for Woman's Hospital of Philadelphia, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, June 3, 1958:

A petition for the dissolution of the Women's Homoeopathic Hospital of Philadelphia was filed in the Court of Common Pleas No. 4 of Philadelphia County. As an incident of the corporation's termination, the court would be called upon to distribute the hospital's restricted charitable funds which represented an accumulation of some sixty separate gifts and aggregated approximately $350,000. The court appointed two co-masters for the purpose of marshalling the assets, taking testimony, hearing claims and recommending to the court an award *cy pres* of the hospital's funds subject to such award.

After extensive hearings, the masters concluded, and recommended accordingly, that the fund created by the will of William E. Sellers, aggregating, with accretions, approximately $29,000, should be awarded in equal shares to the Woman's Hospital of Philadelphia and the Woman's Medical College of Pennsylvania for the use of its hospital. The masters recommended that the remaining restricted funds be awarded in equal shares to Hahnemann Medical College and Hospital and Woman's Medical College of Pennsylvania for the use of their respective hospitals. After argument on exceptions to the masters' report by disappointed claimants of the fund, the court entered decrees effectuating the recommendations of the masters. From these decrees, Preston Maternity Hospital and St. Luke's and

Children's Medical Center of Philadelphia have appealed.

In reviewing a decree which gives effect to the *cy pres* doctrine, the scope of our inquiry is limited to the question whether the court below misunderstood or misapplied the law or committed a manifest abuse of discretion: *Kensington Hospital for Women Case*, 358 Pa. 458, 462-463, 58 A. 2d 154; *Glase Estate*, 384 Pa. 118, 120, 119 A. 2d 294. In *Commonwealth v. Pauline Home*, 141 Pa. 537, 545-546, 21 A. 661, it was said with respect to a court's exercise of its *cy pres* power,—"The matter was very much in the discretion of the court below, and we would not reverse, unless for a clear abuse of discretion." Objective criteria for determining the operative presence of abused discretion are contained in the following quotation from *Echon v. Pennsylvania Railroad Company*, 365 Pa. 529, 534, 76 A. 2d 175: " 'An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is over-ridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.' " The record in this case fails to disclose the slightest indication of partiality, prejudice, bias, or ill-will on the part of the court below, hence, our review is properly to be limited to determining whether the court below committed an error of law or exercised its broad discretion in the premises in an unreasonable manner.

The parties to these appeals are in agreement as to the law of the case. Their only difference is with respect to the manner in which the court below administered it. In *Wilkey's Estate*, 337 Pa. 129, 133, 10 A. 2d 425, Mr. Justice STERN, speaking for this court, characterized the following from the Restatement, Trusts, §399, as being "perhaps the best enunciation

of the doctrine" of *cy pres*: "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." Long before the Restatement, the doctrine was expressed by this court to similar effect in *City of Philadelphia v. Heirs of Stephen Girard*, 45 Pa. 9, 27-28, as follows: "The rule of equity on this subject seems to be clear, that when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity, for equity will substitute another mode, so that the substantial intention shall not depend on the insufficiency of the formal intention."

In this State, there is express statutory authority for applying the doctrine of *cy pres*. The presently applicable Act of April 26, 1855, P. L. 328, §10, as amended by the Act of May 23, 1895, P. L. 114, §1, 10 PS §13 (superseded by the Act of April 24, 1947, P. L. 100, §10, 20 PS §301.10) provides: "That no disposition of property heretofore or hereafter made for any religious, charitable, literary or scientific use, shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain or ceasing . . . but it shall be the duty of any orphans' court, or court having equity jurisdiction in the proper county, to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity . . . ."

In practical effect, application of the *cy pres* doctrine results in an approximation: *City of Philadelphia v. Heirs of Stephen Girard*, supra. In applying the

doctrine the court exercises its discretion in such a manner as to award the fund to an eleemosynary institution whose services will most nearly approximate the intention of the donor: *Connors v. Ahearn,* 342 Pa. 5, 7, 19 A. 2d 388. As we said in *Williams Estate,* 353 Pa. 638, 643, 46 A. 2d 237, ". . . once the applicability of the cy pres doctrine is indicated, the problem forthwith becomes one of approximating the testator's express direction as nearly as possible and without doing violence thereto." Of course, no court may capriciously substitute its judgment for that of the settlor of the restricted fund and thereby effect a transfer of the gift to a charity not within his general donative scheme: see *Kensington Hospital for Women Case,* supra.

In the instant case, the so-called Sellers Fund was, in a very real sense, self-determinative of its appropriate disposition. By his will, William E. Sellers bequeathed his residuary estate to the Fidelity-Philadelphia Trust Company in trust to pay over, under broad discretionary powers, either the income or the principal of the fund for the endowment of rooms in hospitals "for the benefit and assistance of women or children primarily." In carrying out this intent of the testator, the trust company allocated $60,000 of the residual corpus equally among three institutions which it selected as "hospitals dealing primarily with women and children." The three hospitals so selected were the Woman's Hospital of Philadelphia, the Woman's Medical College of Pennsylvania and the Women's Homoeopathic Hospital of Philadelphia. Of these three hospitals, the Woman's Hospital and the Woman's Medical College hospital are still functioning substantially in the same manner as they were when the trustee made its testamentarily authorized selection in 1938. The masters concluded that to divide the Sellers

Fund equally between the two surviving of the three institutions originally selected by the trustee would most nearly carry out the intent of the donor. As already stated, the court effectuated the masters' consonant recommendation by the decrees now under review in which respect the court acted properly.

As to the remaining restricted funds of the dissolved institution, the masters concluded from the history of the Women's Homeopathic Hospital of Philadelphia and the character of the services which it performed that the intention of the various donors to the institution's funds was compounded of the following elements: (1) to aid a hospital commonly known as a "women's hospital", or (2) to aid a hospital commonly recognized as a "homoeopathic hospital", or (3) both. The masters found that there is no hospital in the Philadelphia area which can be described as being both "a women's hospital" and a "homoeopathic hospital". They thereupon determined that the following hospitals might be regarded as "women's hospitals", namely, Preston Maternity Hospital, Woman's Hospital of Philadelphia, and the hospital of Woman's Medical College of Pennsylvania. The masters also determined that the following hospitals might be regarded as "homoeopathic" in origin and nature, namely, Hahnemann Medical College and Hospital and St. Luke's and Children's Medical Center. The masters, limiting their selection to a choice from among these institutions, concluded that the hospital of the Woman's Medical College of Pennsylvania and Hahnemann Medical College and Hospital should share equally in the general restricted funds of the Women's Homoeopathic Hospital.

The reasons supporting the masters' conclusions with respect to the award *cy pres* of the restricted funds (other than the Sellers bequest) are well stated in the opinion of Judge GUERIN for the court below as fol-

lows: "The recommendation referred to was that, regardless of deviations that may have occurred in practice, under the spur of necessity, as the character and reputation of Women's Homeopathic Hospital were, as suggested by its name, in equal proportions, that of a 'women's' hospital and of a 'homoeopathic' hospital, and as it was impossible to find evidence to support a finding that the donors of the restricted funds were, on the whole, more animated by one characteristic of the Hospital than by the other, it would be equitable and carry out the intent of the donors best as a group, if one half of the restricted funds (other than the Sellers bequest) were awarded to a 'women's' hospital and the other half to a 'homoeopathic' hospital. In these two categories, the Masters recommended designation of Woman's Medical as the 'women's' hospital and Hahnemann as the 'homoeopathic', but this recommendation was not based exclusively on their greater size and efficiency as compared with the other claimants in their respective groups. The finding with regard to each was made, to quote the Fourth Interim Report, 'taking *all* elements into consideration,' and because each is 'best qualified by its character and services to carry out most nearly the intent of the donors,' as a 'women's' hospital and as a 'homoeopathic' hospital respectively."

The arguments of able counsel for the appellants have failed to persuade us that the court below erred as a matter of law or that it abused its discretion in approving and adopting the findings, conclusions and recommendations of the masters and that we could make a more equitable distribution of the restricted charitable funds than what the masters recommended after their thorough and painstaking investigation and consideration of the problems involved.

Decrees affirmed; costs to be borne by the restricted general funds for distribution.