## Wagner Estate

*Edward McL. Watters, 3rd, of Pepper, Hamilton & Scheetz,* for accountant.

*Richard W. Thorington, of Obermayer, Rebmann, Maxwell & Hippel, Howard M. Kuehner* and *John Mulford,* for distributees.

*Catherine R. Barone, Assistant Attorney General,* and *Michael Minkin,* for Commonwealth.

SHOYER, J., March ·1, 1972.—Joseph Christian Wagner, also known as Joseph C. Wagner, died April 2, 1948, leaving a will dated March 11, 1931, and a codicil thereto dated February 6, 1946, a copy of each of which is attached, whereby he gave his residuary estate to his trustee to pay the net income to his mother (she predeceased) and his sister, Laura B. Wagner, for life, and upon the death of the survivor of them to distribute the principal three-twentieths to each of Protestant Episcopal Church of St. Jude and the Nativity, University of Pennsylvania, Hayes Mechanics' Home (now Hayes Home for Men); two-twentieths to each of the Philadelphia Episcopal City Mission (revoked by codicil), Episcopal Hospital and Zion

Episcopal Church; one-twentieth to each of Osteopathic Hospital of Philadelphia (revoked by codicil), Domestic and Foreign Missionary Society of Episcopal Church, New York, Women's Southern Homeopathic Hospital, Pennsylvania Bible Society and Philadelphia Council of the Boy Scouts of America. The three-twentieths revoked by the codicil was to be divided into seven shares, one each for testator's seven named cousins, to wit: Ella Burdsall, Louisa Heffern, Annie E. Halstead, William Wagner, Edward L. Wagner, Nellie Bowen and Edith Lebegern, "if they be living respectively at the decease of my sister, Laura B. Wagner" and if any of the cousins predecease his sister such share shall become a part of the general residuary trust estate.

In Paragraph FIFTH (d), he provided that "if any organization above named should not be in existence at the time of said distribution, in such case the share of my estate which such nonexistent organization would otherwise have been entitled to receive shall be added, pro rata, to the shares of my estate distributable among the remaining organizations above mentioned."

The fund being accounted for was awarded to the accountant under the adjudication of Bolger, J., dated February 18, 1949, in trust for Laura B. Wagner.

This account was filed because Laura B. Wagner died on May 13, 1971. She left a will upon which letters testamentary were granted to Louise Heffern. Attached hereto is a waiver of a full account of income.

Ella Burdsall, one of the cousins, died October 26, 1954. Louisa Heffern died July 7, 1959. Annie Halstead died January 19, 1947 and William Wagner died May 4, 1949.

The statement of proposed distribution recites the accountant's inability to locate Edward L. Wagner or

Nellie Bowen, the other two cousins who were given a portion of the three-twentieths share of the residuary estate by the codicil. They are believed by the accountant to be deceased since, if living, they would be over 100 years old. The accountant requests that the portions of the three-twentieth share bequeathed to the two missing cousins be awarded to the charities sharing in the residue. There being no objection, the awards will be so made, conditioned, however, upon each of the institutional beneficiaries filing with the clerk of the court their corporate refunding bonds in the sum of $750 as to the institutions receiving the largest fractional shares, $500 bonds by each of the institutions receiving the next largest fractional share, and $250 bonds by each of the other institutions.

The statement of proposed distribution and notice to the parties in interest point out that the Women's Southern Homeopathic Hospital to whom testator bequeathed one-twentieth of the residue is no longer in existence. The accountant proposes to distribute this share, pro rata, among the other charitable institutions.

The statement recites that Women's Southern Homeopathic Hospital (W.S.H.H.) was incorporated by the decree of the Court of Common Pleas No. 4 of Philadelphia, as of December term, 1882, no. 762. Subsequently, by decrees of the same court, the name of the institution was changed to Broad Street Hospital on October 27, 1931, and the institution was merged into Women's Homeopathic Hospital on April 14, 1949. Women's Homeopathic Hospital was dissolved in June 1960. Its assets were divided equally between Hahnemann Hospital and Women's Medical College in a proceeding in the nature of cy pres: Women's Homeopathic Hospital of Philadelphia Case, 393 Pa. 313 (1958). The accountant cites Bodine Trust, 429 Pa.

260 (1968), and Leffmann Trust, 378 Pa. 128 (1954), in support of the pro rata distribution which it proposes.

Counsel for Hahnemann Hospital (H.H.) and counsel for Women's Medical College (W.M.C.) have submitted memoranda in support of their claims to this one-twentieth bequeathed to W.S.H.H. They cite an unreported adjudication by Saylor, J., dated November 29, 1962, in re Thomas P. Mills, Settlor, Phila. O. C., no. 3015 of 1933, in support of their claims.

In Mills, supra, the settlor provided that upon the death of the last surviving life tenant, which occurred on January 3, 1962, the principal should be distributed "unto such of the following institutions as may then be in existence . . . ," naming specific charitable legatees. Two of the institutions, namely, Welfare Federation of Philadelphia and Women's Homeopathic Hospital were dissolved by court order but their services were being assumed and performed by United Fund of the Philadelphia area and W.M.C. and H.H. Judge Saylor's adjudication recites that "In view of the consent of the Attorney General and the agreement of all parties in interest, the proposed distribution is approved." The share bequeathed to Women's Homeopathic Hospital was awarded one-half to each of W.M.C. and H.H.

Counsel's memorandum also cites In Re Trust Estate of Randall Chase (unreported adjudication of Klein, P. J., dated July 3, 1956, no. 3867 of 1940); Estate of Isaac Rabinowitz (unreported adjudication of Klein, P. J., dated June 1, 1956, no. 3257 of 1955); Estate of W. Kirkland Dwier (unreported adjudication of Lefever, J., dated April 17, 1962, no. 92 of 1952). They contend that this testator was interested, not in supporting corporate entities, but rather in supporting the charitable work carried on by those entities.

The auditing judge is of the opinion that the Mills case, supra, and other cases cited by counsel for W.M.C. and H.H. are here inapposite. In these cited cases, the distributions to the charities were made as recommended by the respective accountants and with the acquiescence or approval of the Attorney General and the *approval of all parties in interest*, or absent any objections, after full notice.

In Randall Chase, supra, the court stated in its adjudication:

"As recited above, settlor directed that if any of the thirteen charitable or educational organizations entitled to receive income under the provisions of the deed, 'should cease to exist or should merge with any other organization or organizations' in either such case the share of income which such organization would have received should be added, share and share alike, to the shares of income distributable to the remaining organizations. In view of the fact that the Welfare Federation of Philadelphia transferred all of its assets and liabilities to the Community Fund of Philadelphia and vicinity, and thereafter the latter merged into the United Charities Campaign, which then adopted the name of Community Chest of Philadelphia and Vicinity, the statement of proposed distribution requests the Auditing Judge to determine whether the said Community Chest of Philadelphia and Vicinity is now entitled to the share of income given to the Welfare Foundation of Philadelphia, under the Deed as amended.

"The right of the Community Chest of Philadelphia and Vicinity to receive this share of income in view of the rather explicit direction contained in the deed, appears to the Auditing Judge to be very doubtful. The statement of proposed distribution suggests, however, that the Community Chest of Philadelphia and Vicin-

ity remains substantially the same organization as the Welfare Federation of Philadelphia and is thus entitled to the share of income in question, and as all of the parties adversely affected by this construction appear to have had notice of the audit and of the accountant's intention to suggest this construction and there were no objections thereto at the audit, the said share of income will be awarded as requested in the statement of proposed distribution."

The present accountant's proposed distribution is in accord with the explicit directions of testator. Testator has clearly and precisely provided for dispositions of the share of any nonexistent organization at the time of distribution. By so doing he has withheld from the court any consideration of, or responsibility as to, cy pres. When the wishes of testator are so clearly and distinctly spelled out, it is the duty of the court to execute them and to refrain from indulging in the guessing game of cy pres.

While only one of the existing residuary charities has formally appeared and expressed its approval of the accountant's proposed distribution, the failure of the others to respond is indicative of their approval and can in no way be taken as an expression of disapproval. We certainly do not have the concurrence in the claim of H.H. and W.M.C. that was present in the authorities which those two hospitals have cited and on which they rely.

In Leffmann Trust, supra, the settlor under deed of trust dated July 2, 1915, gave the trust property to his trustee to pay the income to him for life, then to his wife, for life, and after their deaths in three equal shares to Wagner Free Institute of Science of Philadelphia, the Franklin Institute of the State of Pennsylvania and the Jewish Hospital Association of Philadelphia. The deed provided that if, after the death of

himself and his wife, any of the three institutions ceased to exist, the share of income shall be equally divided between such of them as may continue to have a separate corporate existence. By decree of the Court of Common Pleas of Philadelphia dated February 5, 1952, the court approved the consolidation of the Jewish Hospital Association, Mount Sinai Hospital Association and Northern Liberties Hospital Association under the new name of Albert Einstein Medical Center.

The Franklin Institute objected to the distribution of one-third of the income to the Jewish Hospital Association. The opinion of the Court of Common Pleas was affirmed, per curiam. The court held, page 132:

"The intention of a settlor of a deed of trust must prevail if consistent with rules of law. As was said in Hirsh's Trust Estate, 334 Pa. 172, 178, by Mr. Justice Maxey, later Chief Justice: 'We are not at liberty to ignore the words he used merely because he might have used others if he could have divined the provisions of his widow's will [made at a later date]. "The language employed had a well recognized meaning; if he did not anticipate and provide for a contingency possibly arising in the ultimate distribution of his widow's estate, the court may not make another will for him." ' In Scott's Trust, 322 Pa. 1, 16, Mr. Justice Barnes held: 'Where the meaning of a trust deed stands out with clearness, as in the present case, the application of technical rules is unnecessary.' In Riverside Trust Co. v. Twitchell, 342 Pa. 558, 561, Mr. Justice Drew held: ' ". . . When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's pri-

vate dominion: Holdship v. Patterson, 7 Watts, 547." See also Harrison's Estate, 322 Pa. 532, 533.'" Cf. Bodine Trust, 429 Pa. 260 (1968).

In view of the foregoing, I find that the distribution proposed by the accountant is in accord with the clearly expressed direction of testator. The claims by Hahnemann Medical College and Hospital of Philadelphia and Women's Medical College of Pennsylvania are dismissed.

The account shows a balance of principal personalty of $135,149.95
and balance, proceeds sale of real estate 333.95
and balance income 4,031.11
together $139,515.01
less credits as per appearance slip 39.11
leaving $139,475.90
of which, subject to such inheritance tax as may be due and assessed, together with income since accrued, and subject to distribution heretofore properly made, and conditioned upon the filing of refunding bonds, as above, is awarded as to income accrued to May 13, 1971, to the personal representative of the estate of Laura B. Wagner, deceased, and the balance, principal and income:

Three-sixteenths to each of Protestant Episcopal Church of St. Jude and the Nativity, University of Pennsylvania and Hayes Home for Men;

Two-sixteenths to each of Episcopal Hospital and Zion Protestant Episcopal Church; and

One-sixteenth to each of the Domestic and Foreign Missionary Society of the Protestant Episcopal Church, the Pennsylvania Bible Society and the Philadelphia Council, Boy Scouts of America.

Accountant is authorized to make the necessary transfers as above.

And now, March 1, 1972, the account is confirmed nisi.