**In re ESTATE OF Simon W. RIDER.**

**Appeal of W.G. RIDER, Administrator of the Estate of Simon W. Rider, Deceased, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1998.

Filed April 29, 1998.

Robert L. Webster, Uniontown, for appellant.

Kathleen Helling, Latrobe, for Taylor, participating party.

Before FORD ELLIOTT, MUSMANNO and HESTER, JJ.

FORD ELLIOTT, Judge:

In this probate case, appellant William G. Rider appeals from the trial court's final decree dated August 18, 1997, which held, in effect, that appellant could not inherit sixty shares of stock from appellant's brother because the stock was owned by appellees Joan B. Taylor and Harry E. Taylor III ("Objectors"). We affirm.

The facts of the case are as follows. Marion B. Rider ("Marion") married appellant's brother, Simon W. Rider ("Simon"). Simon was Marion's second husband. Objectors are Marion's grandchildren by virtue of her marriage to her first husband, John Buell Snyder. On the date of Marion's death, October 5, 1961, Marion was the record owner of sixty shares of stock in the Fayette Broadcasting Corporation ("FBC"), evidenced by stock certificate # 15. The second provision of Marion's duly executed will reads in pertinent part as follows:

> Any and all shares of stock in the Fayette Broadcasting Corporation which I may hold at the time of my death I give and bequeath unto my said husband, Simon W. Rider, who shall have full power during his lifetime to vote said stock and receive all dividends thereon and exercise all powers, rights, and privileges of a stockholder in said corporation and he shall also have the right to sell, transfer, alienate, assign, pledge, encumber, or otherwise dispose of said stock as he may see fit, and shall have power to apply the proceeds therefrom to his own use, and no parties dealing with him in respect thereto shall be required to see to application of the proceeds. If said stock shall still be held by my said husband at the time of his death, I give and bequeath the said stock to such of the children of Harry Earl

Taylor, Jr. and the aforesaid Yvonne Snyder Taylor, of Brandywine, Maryland, as shall then be living, in equal shares. For the sake of clearness I state that the children of said parents now living are Joan Buell Taylor and Harry Earl Taylor III [Objectors], but that it is my intention to also include any children hereafter born who shall be living at the time of my death.

\* \* \*

If all of said children shall have predeceased my said husband, Simon W. Rider, said stock shall from and after the death of the last of such children to die be his property absolutely and pass as part of his estate.

R.R. 57a–58a.

Upon Marion's death, her husband Simon was named executor of her will. Shortly thereafter, Simon transferred the sixty shares of stock from Marion's name to Simon personally. On November 6, 1961, FBC cancelled stock certificate # 15 (which had been issued in Marion's name) and issued stock certificate # 24, also representing sixty shares of FBC stock, to Simon.

Simon kept stock certificate # 24 from November 1961 until his death on January 15, 1996. Simon died intestate, leaving his brother William G. Rider (appellant) as his sole heir. Appellant was named executor of Simon's estate. On April 3, 1997, appellant listed sixty shares of FBC stock as a personal asset of Simon's estate. The next day, Objectors filed an objection to this listing. They argued that pursuant to Marion's will, they own the stock upon Simon's death; as such, the stock should not be listed as a personal asset of Simon's (and, by extension, become inherited by appellant).

After a hearing on the objections the trial court issued a decree *nisi*, holding in favor of Objectors. On August 18, 1997, the trial court denied appellant's objections to the decree *nisi* and made the decree final. This appeal followed.

The trial court correctly framed the issue as whether Marion's will granted Simon a fee simple (absolute) interest in the stock or merely a life estate with a remainder interest over to Objectors. In the former case, Si-

mon would own the stock absolutely, and would be able to pass the stock to his brother, appellant, through intestacy; in the latter case, Simon would own the stock during his lifetime, and Objectors would take the stock upon Simon's death. The court determined that Marion had granted Simon only a life estate with power of consumption. We find no legal error or abuse of discretion in this ruling.

First, we set forth our standard of review and relevant principles pertaining to the interpretation of wills.

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support.

This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts.

The testator's intent is the polestar in the construction of every will and that intent, if it is not unlawful, must prevail.

In order to ascertain the testamentary intent, a court must focus first and foremost on the precise wording of the will, and if ambiguity exists, on the circumstances under which the will was executed, only if the testator's intent remains uncertain may a court then resort to the general rules of construction. The words of a will are not to be viewed in a vacuum but rather as part of an overall testamentary plan.

When interpreting a will, we must give effect to word and clause where reasonably possible so as not to render any provision nugatory or mere surplusage. Further, technical words must ordinarily be given their common legal effect as it is presumed these words were intentionally and intelligently employed, especially where they are used by someone learned in probate law.

Courts are not permitted to determine what they think the testator might or would have desired under the existing circumstances, or even what they think the testator meant to say. Rather, the court must focus on the meaning of the testator's words within the four corners of the will. Finally, a court may not rewrite an unambiguous will.

*In re Estate of Harrison,* 456 Pa.Super. 114, 120–22, 689 A.2d 939, 942–43 (1997) (citations and quotations omitted).

A fee simple absolute is a form of ownership in which a party has unlimited power to sell, transfer, alienate, or bequeath the property in any lawful manner. Summ. Pa. Jur.2d, Property, § 5.5. "[R]estraints upon the power of the owner of an absolute estate to determine its devolution by will or by intestacy have been generally struck down. Thus, the forfeiture, by gift over [to remaindermen], of an absolute estate upon failure to dispose of the property during life or by will is invalid." *In re Byrne's Estate,* 320 Pa. 513, 517, 181 A. 500, 502 (1935). Thus, if Simon were given an absolute interest in the stock at issue, the provisions of Marion's will purporting to transfer the property to Objectors upon Simon's death would be void, and appellant would be able to take the stock through intestacy.

A more restricted form of property ownership is the life estate. For purposes of this case, a life estate is one in which the donee [Simon] has certain powers over the property during his or her lifetime, subject to the rights of remaindermen listed in the donor's will [Objectors] who have an interest in the property upon the death of the donee. Summ. Pa. Jur.2d, Property, § 5:10. In the usual case, a person with a life estate interest holds the property in trust for the remaindermen. *Id.* at § 5:15.

A variation on the life estate is a "life estate with the power of consumption." Here, the donee has the power not only to enjoy the property during his lifetime, but also to dispose of all or part or the property without regard to the future rights of the remaindermen. *Degenkolv v. Daube,* 143 Pa.Super. 579, 583–85, 18 A.2d 464, 466 (1941). One significant restriction on this right of consumption is that the donee *cannot give away the property without consideration:* in other words, the consumption must be for the donee's benefit. Thus, the donee cannot bequeath the property in a will, or give it away as an *inter vivos* gift. *Id.* at 585–87, 18 A.2d at 467. As with a standard life estate, when a donee receives a life estate with power of consumption, *and* the property is held by the donee at the time of his death, the property then transfers to the remaindermen. *Id.* at 583–85, 18 A.2d at 466.

Our supreme court in *Stanton v. Guest,* 285 Pa. 460, 132 A. 529 (1926), discussed the factors to be considered when deciding whether a gift has been given in fee simple or merely as a life estate with power of consumption:

Where a testator in the first instance uses language suitable to the grant of a fee simple estate, but, by subsequent words, immediately following in the devise, indicates a dominant intent to give only a less estate, the latter purpose will be upheld.

On the other hand, where it is apparent from the words of the will that the dominant purpose of the testator is to devise a fee simple estate, and the subsequent language indicates merely a subordinate intent to strip the estate thus given of one or more of its inherent attributes, the law will hold that this cannot be done; and the fee simple estate passes to the devisee with all of its inherent qualities.

In applying the above rule to a particular case, it is important to bear in mind a testator cannot give an absolute fee and withhold from the donee the qualities usually recognized as inseparable from an estate of inheritance. At the same time, however, in all cases of the construction of wills, the intention of testator must control,

and if, from a reading of the entire will, an intent to restrict the gift is clearly the dominant one, such intent must be given effect and the will, as a whole, construed, not as an attempt to limit a fee, but as a gift of less than a fee.

The true test of the effect of language apparently at variance with other parts of the devise, is whether the intent is to give a smaller estate than the meaning of the words of the gift standing alone would import, or to impose restraints upon the estate given. The former is always lawful and effective, the latter rarely, if ever; the first, because the testator's intention is the governing consideration in the construction and carrying out of a will; the second, because even a clear intention of the testator cannot be permitted to contravene the settled rules of law by depriving any estate of its essential legal attributes.

*Id.* at 462–63, 132 A. at 530 (citations omitted.)

In *Stanton*, the court analyzed a will in which the donor simply and unequivocally bequeathed all of her property to her husband. However, in the very next paragraph, the donor wrote:

> [U]pon the death of my husband, I give, devise and bequeath unto my nephew and niece . . . all of the estate . . . that I have hereinbefore given and devised to my said husband, that my said husband shall be seized of or possessed of at the time of his death, and that he has not disposed of, to have and to hold to them equally share and share alike . . .

*Id.* at 461, 132 A. at 530. The husband then died, and purported to bequeath the property in dispute to plaintiff Stanton. Stanton argued that he should inherit the property under the husband's will because the husband was given an absolute interest in the subject property; the niece and nephew argued that they should inherit the property pursuant to the wife's will, because the husband had only been granted a life estate with power of consumption. The supreme court sided with the niece and nephew, reasoning as follows:

> [I]t is clearly evident testatrix had no intention of giving her husband an estate in fee, but indicates unmistakably a dominant purpose to devise to him no more than a life estate in the property, with power to consume any part of or all of it, with provision that such part as he might not thus dispose of should vest in the nephew and niece of testatrix in fee and not go to the blood of strangers of testatrix, as would be the case should the will of her husband prevail. When read as a whole, the will shows clearly testatrix did not first give an estate in fee and then attempt to deprive it of some of its essential legal attributes but limited the original gift to an estate for life with a remainder over of the unconsumed portion. This construction gives full effect to every part of the will.

*Id.* at 463–64, 132 A. at 530–31.

Even more strikingly, in *Byrne's Estate, supra,* our supreme court held that when one paragraph of a will granted property to a donee "absolutely," yet the next paragraph provided that upon the donee's death the unused portion of the property should go to a third party, the donee held the property as a life estate with power of consumption. *Id.* at 517–21, 181 A. at 503–04. The court rejected the contention that construing the will as a life estate rendered the word "absolutely" a nullity, reasoning that to read "absolutely" as granting a fee simple to the donor would render an entire paragraph of the will void and would utterly defeat the plain intent of the decedent as expressed in the entire will. *Id.* at 517–19, 181 A. at 503.

■ We find this case to be squarely on point with *Byrne's Estate, supra,* and *Stanton v. Guest, supra.* We recognize that Simon was given "the right to sell, transfer, alienate, assign, pledge, encumber or otherwise dispose of said stock as he may see fit." However, we must read the will as a whole, and attempt to give effect to all of its provisions. Here, the entire will shows a plain intention to grant Simon only a life estate with power of consumption in the stock, and that if Simon still held the stock at his death, the stock would inure to Objectors. Under this interpretation, the phrase "as he sees fit" is not meaningless; rather, it is simply limited to dispositions during Simon's life-

time. *Byrne's Estate, supra; Stanton v. Guest, supra.*[1] To hold otherwise would render a long paragraph of Marion's will invalid, including a provision clearly stating that the stock should pass through Simon's estate only if Objectors predecease Simon. Appellant's first argument lacks merit.

■ Next, appellant contends without citation to authority that when FBC cancelled stock certificate # 15 (held in Marion's name) and issued stock certificate # 24 to Simon, Marion's will "no longer controlled further disposition of the asset." (Appellant's brief at 14.) This is apparently so because "stock registered in the name of the decedent [Simon] gives rise to a presumption of ownership." (*Id.*) The trial court, relying on the testimony of an FBC officer, found that the stock certificate transfer was a necessary administrative procedure for Simon to enjoy the benefits of stock ownership during his lifetime. (Trial court opinion, 7/31/97 at 9.) We agree, and further hold that the simple cancellation of certificate # 15 and issuance of certificate # 24 had no legal effect on appellant's entitlement to the underlying asset after Simon's death. In short, appellant has failed to demonstrate, legally or factually, that the sixty shares of FBC stock held by Simon at his death were anything other than the same asset that he inherited from Marion. Next, Simon's "ownership" of the stock was never in dispute; the question is whether he retains the power to dispose of the property after his death. For the reasons set forth above, we find that he did not. The trial court correctly found the stock at issue should not be listed as a personal asset of Simon's estate. Accordingly, we affirm.

Affirmed.

1. The only difference between the instant case and the cited cases is that here, Simon died intestate, while in the cited cases the donees had died testate. This distinction is immaterial, because in either event ownership of the asset inures immediately to the remaindermen upon the donee's death.