J-A29008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AUDREY MACTURK AND ANNAMARIE BROWN, EXECUTRIXES AND TRUSTEES OF ESTATE OF RAYMOND T. MORRIS | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 638 MDA 2020 |
| BENEFICIARIES OF THE TESTAMENTARY TRUST OF RAYMOND T. MORRIS | : : : : : | |
| APPEAL OF: JOHN MORRIS | : | |

Appeal from the Order Entered April 3, 2020
In the Court of Common Pleas of Susquehanna County Orphans' Court at
No(s): OC060-2019

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                **FILED DECEMBER 31, 2020**

Appellant, John Morris, appeals from the April 3, 2020 Order entered in the Court of Common Pleas of Susquehanna County, Orphans' Court, terminating the testamentary Trust established by the last Will and Testament of Raymond T. Morris ("Decedent") and distributing the proceeds of the sale of Trust property to the Trust beneficiaries. Appellant challenges the court's finding that the Trust was not economically viable. After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Decedent issued his Last Will and Testament on October 8, 2001 ("the Will"). Decedent died on February 20, 2008, and, pursuant to the Will, his 22 acres of land in Susquehanna County, and the residence and barn on it ("Trust Property"), became the sole asset of a testamentary trust for the use of his heirs ("the Trust"). The Will appointed Audrey MacTurk and Annamarie Brown, Decedent's daughters, to serve as trustees ("Trustees").[1] Will, 10/8/01, at ¶ THIRD B. The Trust Property is essentially a mountain vacation home. Trustees held and maintained the Trust Property for over a decade.

On October 18, 2019, Trustees filed a Petition seeking court approval to sell the Trust Property. Trustees alleged that the Trust had no viable means of funding, was insolvent, and economically infeasible. Petition, 10/18/19, at ¶¶ 14-15, 17. Trustees further averred that they had made "many requests" for financial assistance from the Trust Beneficiaries, but "did not receive such in amounts sufficient to continue maintaining the property as a Trust asset." *Id.* at ¶15. According to Trustees, the Will instructed them to sell Trust Property if it was economically infeasible to continue to possess it. *Id.* at ¶ 7. From those sale proceeds, Trustees sought to recover personal funds they paid for Trust Property expenses. *Id.* at ¶ 14. Trustees also sought a Declaratory Judgment directing the distribution of the sale proceeds to the Trust beneficiaries. *Id.* at ¶¶ 26-27.

---

[1] The Trust beneficiaries include Appellant, who is one of Decedent's grandsons, Trustees, and other children and grandchildren of Decedent. *See* Trust Instrument, 10/20/09; N.T. Hearing, 11/15/19, at 17, 111.

Appellant filed an Answer to Trustees' Petition on November 7, 2019, opposing sale of the Trust Property. Answer, 10/7/19, at New Matter ¶¶ 1-2.

On November 15, 2019, the court held a hearing on Trustees' Petition. Trustees entered the Will and several emails into evidence. N.T. Hearing, 11/15/19, at 34-36, 64-68. The emails were from Trustees to the Trust beneficiaries detailing expenses related to the Trust Property and requesting monetary contributions to fund the Trust. *Id.*

Trustees testified at the hearing. They stated that, in addition to serving as Trustees, they also acted as executrixes of Decedent's Estate. *Id.* at 17. As a commission for acting as executrixes, Trustees were to be paid $10,000 each by the Estate. *Id.* at 51. However, because the Trust had immediate expenses upon formation, and Decedent left no money to fund the Trust, Trustees each deposited their $10,000 commission ($20,000 total) into the Trust's bank account. *Id.* at 51-52, 97. At the time of the deposit, Trustees' lawyer sent a letter to the Trust beneficiaries notifying them that Trustees' $20,000 deposit was a loan to be repaid at 6% interest. *Id.* at 53. Trustees have not been repaid. *Id.* at 23.

Trustees estimated that the Trust Property costs approximately $16,000 per year to maintain. *Id.* at 25. Trust Property expenses include utilities, regular maintenance, taxes, accounting and legal fees, home repairs, and improvements. *Id.* at 20. Over the years, repairs and improvements have included installing a new roof, kitchen and entryway floors, a bathroom subfloor, living room carpeting, a water heater, an HVAC system, siding, and

a gutter. *Id.* at 25-26. Trustees notified Trust beneficiaries by email of these issues, when they were fixed, and the cost. *Id.* at 60, 82-83, 95, Exhibits 1-5.

The Will instructs the Trustees to charge beneficiaries a "*per diem*" rate to use the property. Will, at ¶ THIRD, B. However, the Trust beneficiaries did not use the Trust Property frequently enough to generate sufficient funds from the "*per diem*" funding scheme. N.T. Hearing, at 20. As a result, Trustees requested contributions from beneficiaries to fund the Trust. *Id.* at 20-22, 27-28, Exhibits 1-5. They did not receive enough money to maintain the Trust Property. *Id.* at 22, 27-28.

Trustees signed a gas lease in 2011 that earned the Trust approximately $100,000, and another gas lease in 2018 for approximately $20,000. *Id.* at 20-21. Trustees spent this money on Trust Property maintenance and expenses. *See id.* at 20, 25-26.

At the time of the hearing, the Trust bank account showed a balance of $17,711. *Id.* at 100. Based on Trustees' testimony, the court estimated that the Trust owes Trustees approximately $45,000, including repayment of the two $10,000 loans. *Id.* at 109.

The Will instructs that, if Trustees determine that it is not economically feasible to continue holding the Trust Property, they have the right to sell the

Trust Property with court approval.[2] Will, at ¶ THIRD. In 2016, Trustees listed the Trust Property for sale and notified the Trust beneficiaries of their intent to sell the property. N.T. Hearing, at 32. No beneficiary objected. *Id.* at 89. Trustees did not receive an offer for the property, so they removed it from the market. *Id.* at 33. In 2019, Trustees relisted the property for sale after again notifying the Trust beneficiaries. *Id.* Trustees received a purchase offer of $340,000. *Id.* at 58.

After the hearing, the court directed Trustees to file an accounting. Trustees filed an accounting on January 29, 2020, which, in relevant part, listed their $20,000 deposit as a "loan from Trustees." Accounting, 1/29/20, at 2.

On April 2, 2020, Appellant filed what he titled "Offer of Proof," objecting to the accounting. In essence, Appellant argued that the accounting erred in considering Trustees' $20,000 to be a loan rather than a gift. Offer of Proof, filed 4/2/20, at 3-4. Without having to repay the $20,000, he alleged that the Trust was solvent. *Id.*

On April 3, 2020, the court issued an Order granting Trustees' Petition and request for Declaratory Judgment, approving the sale and distribution of

---

[2] The Will directs that the proceeds of the sale of Trust property were to go to St. Christopher's Hospital. Will, at ¶ THIRD, E. However, Decedent's Estate previously purchased from St. Christopher's Hospital the right to sale proceeds. N.T. Hearing, at 30-32.

funds. In its Opinion in Support, the court made several findings of fact, including the following:

> 11. The $10,000 each that Trustees dedicated to the [T]rust were loans, to be repaid plus 6% interest.
>
> * * *
>
> 17. At this point, the testamentary [T]rust has more liabilities than revenue and no foreseeable funding stream exists [to] increase revenues so as to properly cover those expenses.
>
> * * *
>
> 34. On January 29, 2020, Petitioners filed a detailed accounting that demonstrated that the Testamentary Trust was no longer economically viable.

Trial Ct. Op., 4/3/20, at ¶¶ 11, 17, 34.

Appellant timely filed a Notice of Appeal, and both he and the trial court complied with Pa.R.A.P. 1925.[3]

In his sole issue preserved for appeal, Appellant challenges the trial court's finding that Trustees' $20,000 deposit into the Trust account was a loan to be repaid at 6% interest. Appellant's Br. at 2. He argues that the $20,000 was a gift and should not be considered a Trust liability. The crux of Appellant's argument is that if the $20,000 is a loan, then the Trust is

---

[3] Appellant is serving as the representative for Trust beneficiaries John Morris, Jr., Katie Morris, Kyle Morris, Raymond Morris, Jr., Raymond Morris, III, Dennis Morris, Debra Morris, and Thomas Morris. N.T. Hearing, 11/15/19, at 4-6.

insolvent, whereas if it was a gift then the Trust is solvent.[4] ***Id.*** at 6-9. Appellant does not address the other expenses the court considered when coming to its conclusion that the Trust "has more liabilities than revenues" and is "no longer economically viable." Trial Ct. Op., at ¶¶ 17, 34.

Appellant challenges the findings of the Orphans' Court, which sat as the factfinder. We must give the court's findings "the same weight and effect as the verdict of a jury, [which] will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support." ***In re Estate of Elkins***, 888 A.2d 815, 822 (Pa. Super. 2005) (citation omitted). "The rule is particularly applicable to the findings of fact which are predicated upon the credibility of the witnesses . . . and upon the weight given to their testimony." ***Id.*** (citation omitted).

Essential to making a valid gift is donative intent. ***Wagner v. Wagner***, 353 A.2d 819, 821 (Pa. 1976). Donative intent is "the intention to make an immediate gift." ***Id.*** (citation and quotation marks omitted). Initially, the burden is on the donee to prove donative intent by clear, precise, and convincing evidence. ***Hera v. McCormick***, 625 A.2d 682, 686 (Pa. 1993).

---

[4] In his Brief, Appellant presented two additional issues on appeal: (1) Trustees failed to sustain their burden to prove "economic infusibility," and (2) the court erred in not conducting a supplemental hearing on Trustees' accounting. ***Id.*** Appellant waived these issues by failing to raise them in his Rule 1925(b) Statement. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived.").

Additionally, Appellant does not challenge the Orphans' Court's grant of declaratory relief directing the distribution of sale proceeds.

Once the donee establishes *prima facie* evidence of a gift, the burden shifts to the putative donor to rebut the donee's evidence. ***Id.***

Appellant testified at the hearing, but he provided no testimony or evidence that Trustees intended the $20,000 as a gift. ***See*** N.T. Hearing, at 111-33. In his Brief, Appellant fails to cite to any record evidence supporting his bald claim that Trustees intended the $20,000 as a gift. ***See*** Appellant's Br. at 6-9. Thus, Appellant failed to carry his burden to establish *prima facie* evidence of Trustees' donative intent.

Trustees, however, testified at the hearing that they intended to loan the Trust $20,000 at 6% interest. ***See*** N.T. Hearing, at 18, 22-23, 34, 41, 47, 53, 97, 100. The court credited this testimony and found that "[t]he $10,000 each that Trustees dedicated to the [T]rust were loans, to be repaid plus 6% interest." Trial Ct. Op., at ¶ 11. ***See also*** N.T. Hearing, at 109.

After reviewing of the record and relevant case law, we conclude that the record supports the court's finding, and we discern no error of law or abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/2020

- 8 -